# Illinois Official Reports

## Supreme Court

***Folta v. Ferro Engineering*, 2015 IL 118070**

| | |
|---|---|
| Caption in Supreme Court: | ELLEN FOLTA, Indiv. and as Special Adm'r of the Estate of James Folta, Deceased, Appellee, v. FERRO ENGINEERING, a Division of ON Marine Services Company, Appellant. |
| Docket No. | 118070 |
| Filed | November 4, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. William D. Maddux and the Hon. James M. Varga, Judges, presiding. |
| Judgment | Appellate court judgment reversed. Circuit court judgment affirmed. |
| Counsel on Appeal | Joshua G. Vincent, Craig T. Liljestrand, Kimberly A. Jansen, Paul M. Markese, Jr., and Abigail M. Higgins, of Hinshaw & Culbertson LLP, of Chicago, for appellant. |
| | J. Timothy Eaton and Jonathan B. Amarilio, of Taft Stettinius & Hollister LLP, and Nicholas J. Vogelzang, of Connelly & Vogelzang LLC, both of Chicago, and Donald P. Blydenburgh and Jerome H. Block, of Levy Phillips & Konigsberg LLP, of New York, New York, for appellee. |

Robert C. Johnson and Steven L. Merouse, of Dentons US LLP, of Chicago, for *amici curiae* American Insurance Association *et al.*

Kirk C. Jenkins, of Sedgwick LLP, of Chicago, for *amici curiae* Caterpillar Inc., *et al.*

Craig L. Unrath, Brad A. Elward and Melissa N. Schoenbein, of Heyl, Royster, Voelker & Allen, of Peoria, and Patrick W. Stufflebeam, Drew Kemp and Julie K. Brown, of HeplerBroom LLC, of Edwardsville, for *amicus curiae* Illinois Defense Trial Counsel.

L. Elizabeth Coppoletti, of Nyhan, Bambrick, Kinzie & Lowry, P.C., and Larry Krause, both of Chicago, for *amicus curiae* Illinois Self-Insurers' Association.

Michael V. Oltmann, of Goldenberg Heller Antognoli & Rowland, P.C., of Edwardsville, and Joel A. D'Alba, of Asher, Gittler & D'Alba, Ltd., of Chicago, for *amicus curiae* Illinois AFL-CIO.

Kathy Byrne, of Cooney & Conway, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

John Simmons and Ted N. Gianaris, of Simmons Hanly Conroy, of Alton, for *amicus curiae* Asbestos Disease Awareness Organization.

| Justices | JUSTICE THEIS delivered the judgment of the court, with opinion. |
| | Chief Justice Garman and Justices Karmeier and Burke concurred in the judgment and opinion. |
| | Justice Freeman dissented, with opinion, joined by Justice Kilbride. |
| | Justice Thomas took no part in the decision. |

**OPINION**

¶ 1    In this case we are asked to consider whether an employee can bring an action against an employer outside of the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2010)) and the Workers' Occupational Diseases Act (820 ILCS 310/1 *et seq.* (West 2010)), when the employee's injury or disease first manifests after the expiration of certain time limitations under those acts. For the following reasons, we hold that under these circumstances, the employee's action is barred by the exclusive remedy provisions of those acts.

## BACKGROUND

For four years, from 1966 to 1970, James Folta was employed as a shipping clerk and product tester for defendant Ferro Engineering. During that time period, as part of his job duties, he was exposed to products containing asbestos. Forty-one years later, in May 2011, James was diagnosed with mesothelioma, a disease associated with asbestos exposure. One month later, he brought a civil action in the circuit court of Cook County against 15 defendants, including Ferro Engineering, to recover damages for the disease he developed allegedly as a consequence of his exposure to the asbestos-containing products while employed by Ferro Engineering. James specifically sought relief against Ferro Engineering under several theories, including, *inter alia*, negligence.

Thereafter, Ferro Engineering filed a motion to dismiss the complaint pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2010)) arguing, *inter alia*, that James's claims against it were barred by the exclusive remedy provisions of the Workers' Compensation Act (820 ILCS 305/5(a), 11 (West 2010)) and the Workers' Occupational Diseases Act (820 ILCS 310/5(a), 11 (West 2010)). In response, James maintained that his action fell outside the exclusive remedy provisions because his claims were not "compensable" under the acts. He asserted that since the symptoms of his injury did not manifest until more than 40 years after his last exposure to asbestos, and any potential asbestos-related compensation claim was barred before he became aware of his injury under the 25-year limitation provision in section 6(c) of the Workers' Occupational Diseases Act (820 ILCS 310/6(c) (West 2010)), his cause of action in the circuit court was not barred.

During the pendency of the litigation, James died, and his widow, Ellen Folta (Folta), was substituted individually and as special administrator of James's estate. The complaint was later amended to assert a claim for wrongful death against Ferro Engineering and the other defendants under the Wrongful Death Act (740 ILCS 180/1 *et seq.* (West 2010)).

The circuit court granted Ferro Engineering's motion to dismiss, holding that the action was barred by the exclusive remedy provisions. Specifically related to this appeal, the court found that the running of the limitations period did not render the cause of action noncompensable under the acts. Following the resolution of the claims against the remaining defendants, which were dismissed after settlement or otherwise, Folta appealed from the dismissal of the claims against Ferro Engineering.

The appellate court reversed and remanded. 2014 IL App (1st) 123219. Relying on this court's ruling in *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455 (1990), the appellate court explained that an injured employee may bring a common-law action against his employer where "the injury is not compensable under the Act." (Internal quotation marks omitted.) 2014 IL App (1st) 123219, ¶ 27. The appellate court determined that the term "compensability" must relate to the "ability to recover under the Act." *Id.* ¶ 31. It found that Folta's injury was "quite literally not compensable" under the Workers' Compensation Act because all possibility of recovery was foreclosed due to the nature of his injury and the fact that his disease did not manifest until after the statute of repose expired. *Id.* ¶ 36 ("Through no fault of his own, [he] never had an opportunity to seek compensation under the Act."). Accordingly, the appellate court held that Folta's suit against Ferro Engineering was not barred by the exclusivity provisions of the Workers' Compensation Act and the Workers' Occupational Diseases Act and remanded for further proceedings. *Id.* ¶ 44.

¶ 8    We allowed Ferro Engineering's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2013). We additionally allowed *amici curiae* briefs in support of both parties.[1] Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 9                                                    ANALYSIS

¶ 10    This case requires us to interpret the exclusive remedy provisions of the Workers' Compensation Act (820 ILCS 305/5(a), 11 (West 2010)) and the Workers' Occupational Diseases Act (820 ILCS 310/5(a), 11 (West 2010)). Specifically, we are asked to consider whether these provisions bar an employee's cause of action against an employer to recover damages for a disease resulting from asbestos exposure which arose out of and in the course of employment even though no compensation is available under those acts due to statutory time limits on the employer's liability. The question is one of law, which we review *de novo*. *Cassens Transport Co. v. Illinois Industrial Comm'n*, 218 Ill. 2d 519, 524 (2006).

¶ 11    To answer this question, we begin with a brief overview of the well-established purpose of the acts. The Workers' Occupational Diseases Act provides compensation for diseases arising out of, and in the course of, employment. 820 ILCS 310/1(d) (West 2010). That Act is modeled after and designed to complement the Workers' Compensation Act, which provides financial protection for accidental injuries arising out of, and in the course of, employment. See 820 ILCS 305/1(d) (West 2012). In enacting these statutes, the General Assembly established a new framework for recovery to replace the common-law rights and liabilities that previously governed employee injuries. *Sharp v. Gallagher*, 95 Ill. 2d 322, 326 (1983); *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 44 (1994) ("[t]he [Act] reflects the legislative balancing of rights, remedies, and procedures that govern the disposition of employees' work-related injuries"); *Duley v. Caterpillar Tractor Co.*, 44 Ill. 2d 15, 18 (1969) (" 'The act was designed as a substitute for previous rights of action of employees against employers and to cover the whole ground of the liabilities of the master, and it has been so regarded by all courts.' " (quoting *Matthiessen & Hegeler Zinc Co. v. Industrial Board*, 284 Ill. 378, 382 (1918))).

¶ 12    In exchange for a system of no-fault liability upon the employer, the employee is subject to statutory limitations on recovery for injuries and occupational diseases arising out of and in the course of employment. The acts further provide that the statutory remedies " 'shall serve as the employee's exclusive remedy if he sustains a compensable injury.' " *Sharp*, 95 Ill. 2d at 326-27 (quoting *McCormick v. Caterpillar Tractor Co.*, 85 Ill. 2d 352, 356 (1981)). Accordingly, both acts contain an exclusive remedy provision as part of the *quid pro quo* which balances the sacrifices and gains of employees and employers. *Meerbrey*, 139 Ill. 2d at 462.

[1]In support of Folta, we allowed briefs from the Illinois Trial Lawyers Association, the Asbestos Disease Awareness Organization, and the Illinois AFL-CIO. In support of Ferro Engineering, we allowed a joint brief from various businesses, including Caterpillar, Inc., Aurora Pump Company, Innophos, Inc., Rockwell Automation, Inc., United States Steel Corporation, F.H. Leinweber Company, Inc., Driv-Lok, Inc., Ford Motor Company, and ExxonMobil Oil Corporation; as well as briefs from the Illinois Self-Insurers' Association, the Illinois Defense Trial Counsel; and a joint brief from the American Insurance Association, Property Casualty Insurers Association of America, and the Travelers Indemnity Company.

¶ 13    The exclusive remedy provisions are embodied in two separate sections of the acts. Section 5(a) of the Workers' Occupational Diseases Act provides, in pertinent part, as follows:

> "§ 5. (a) There is no common law or statutory right to recover compensation or damages from the employer *** for or on account of any injury to health, disease, or death therefrom, other than for the compensation herein provided ***." 820 ILCS 310/5(a) (West 2010).

Similarly, section 11 of the same Act provides:

> "§ 11. The compensation herein provided for shall be the full, complete and only measure of the liability of the employer bound by election under this Act and such employer's liability for compensation and medical benefits under this Act shall be exclusive and in place of any and all other civil liability whatsoever, at common law or otherwise, to any employee or his legal representative on account of damage, disability or death caused or contributed to by any disease contracted or sustained in the course of the employment." 820 ILCS 310/11 (West 2010).

The corresponding exclusivity provisions in sections 5 and 11 of the Workers' Compensation Act (820 ILCS 305/5(a), 11 (West 2010)) have been viewed analogously for purposes of judicial construction. See *Dur-Ite Co. v. Industrial Comm'n*, 394 Ill. 338, 344 (1946) (stating that the acts are "homologous"); *James v. Caterpillar Inc.*, 242 Ill. App. 3d 538, 549-50 (1993); *Handley v. Unarco Industries, Inc.*, 124 Ill. App. 3d 56, 70 (1984). Thus, cases that have construed the exclusivity provisions in the context of the Workers' Compensation Act would also apply in the context of the Workers' Occupational Diseases Act.

¶ 14    In discussing the scope of the exclusivity provisions under the Workers' Compensation Act, this court has indicated that the Act generally provides the exclusive means by which an employee can recover against an employer for a work-related injury. *Meerbrey*, 139 Ill. 2d at 462. However, an employee can escape the exclusivity provisions of the Act if the employee establishes that the injury (1) was not accidental; (2) did not arise from his employment; (3) was not received during the course of employment; or (4) was not compensable under the Act. *Id.* (citing *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 237 (1980)).

¶ 15    With respect to the first three categories, we have explained that where an injury is intentionally inflicted by an employer or does not arise out of and in the course of the employment, it is outside the purview of the Act. Therefore, the exclusive remedy provisions are not implicated and do not bar the action. See, *e.g.*, *Collier*, 81 Ill. 2d at 239-40 (intentional torts fall outside the scope of the Act as they are not accidental and do not arise from the conditions of employment); *Handley v. Unarco Industries, Inc.*, 124 Ill. App. 3d 56, 72 (1984) ("we are not persuaded that this legislative balance was meant to permit an employer who encourages, commands, or commits an intentional tort to use the act as a shield against liability by raising the bar of the statute and then shifting liability throughout the system on other innocent employers").

¶ 16    Folta does not dispute that James's asbestos exposure resulting in mesothelioma was accidental and arose out of and during the course of his employment. To escape the exclusivity provisions in this case, Folta relies on the fourth category, equating "compensable" with the possibility to recover benefits. Folta contends that James's injury is not compensable because he never had an opportunity to recover any benefits under the Act. That is, through no fault of his own, the claim was time-barred before his disease manifested. In contrast, Ferro

Engineering maintains that whether an injury is compensable is defined by the scope of the Act's coverage and not on the particular employee's ability to recover benefits.

¶ 17    With respect to the fourth category, this court has had limited opportunity to address what we originally meant in *Collier* when we used the phrase "not compensable" to carve out a category of injuries for which the exclusive remedy provision would not be applicable.

¶ 18    In 1965, this court had previously explained that a "compensable" injury was one suffered in the line of duty, which meant that the injury arose out of and in the course of employment. *Sjostrom v. Sproule*, 33 Ill. 2d 40, 43 (1965); see also *Unger v. Continental Assurance Co.*, 107 Ill. 2d 79, 85 (1985) (explaining that the "line of duty" test has been interpreted in the same way as the test of compensability: that is, an injury will be found to be compensable if it arose out of and in the course of employment).

¶ 19    Although this court equated "compensable" with "line of duty," the sole question raised in those cases was whether the plaintiff's injuries arose out of or in the course of his employment. In another line of cases we further refined our inquiry as to what is meant by compensable by considering whether an employee was covered under the Act where the essence of the harm was a psychological disability and not a traditional physical injury.

¶ 20    In *Pathfinder Co. v. Industrial Comm'n*, 62 Ill. 2d 556 (1976), an employee brought a claim for disability benefits under the Act as a result of the severe emotional shock she suffered after assisting a coemployee whose hand was severed in a machine. The court held that "a psychological disability is not of itself noncompensable under the Workmen's Compensation Act." *Id.* at 563. The court reasoned that this type of injury was within the concept of how we defined an accidental injury. The court found that the term "accident" was defined broadly and included anything that happened "without design or an event which is unforeseen by the person to whom it happens." *Id.* Therefore, the court concluded that an employee who suffered a sudden, severe emotional shock after witnessing the injury of a coemployee had suffered an accident within the meaning of the Act, even though the employee sustained no physical trauma or injury. *Id.* Thus, the workers' compensation claim could proceed.

¶ 21    Thereafter, in *Collier*, the court was asked to consider whether an employee could bring a common-law action to recover for the emotional distress arising from an employer's conduct in failing to provide medical assistance after he suffered a heart attack. In addressing whether the employee could escape the bar of the exclusivity provisions, the court set out four categories, without citation, including consideration of whether the injury was "compensable" under the Act. *Collier*, 81 Ill. 2d at 237. The court merely relied on the decision in *Pathfinder* to find that emotional distress was "compensable" under the Act and, therefore, a claim for emotional damages could not escape the bar of the exclusivity provisions. *Id.*

¶ 22    Lastly, in *Meerbrey*, the court considered whether emotional distress suffered as a consequence of false imprisonment, false arrest, or malicious prosecution was "compensable" under the Act. Although the court recognized that some jurisdictions had held that the type of emotional injuries suffered as a result of being falsely imprisoned were not the type of "personal injury" covered by workers' compensation laws, the court found they were compensable where the employee failed to differentiate the type of emotional injuries from those suffered in *Pathfinder* and *Collier*. *Meerbrey*, 139 Ill. 2d at 467-68.

¶ 23    Thus, *Pathfinder*, *Collier* and *Meerbrey* stand for the proposition that whether an injury is compensable is related to whether the type of injury categorically fits within the purview of the

Act. These cases do not stand for the proposition that whether an injury is compensable is defined by whether there is an ability to recover benefits for a particular injury sustained by an employee. In all of these cases, the exclusivity provisions barred a common-law cause of action.

¶ 24    Here, there is no question that based on the allegations in the complaint, James's disease is the type of disease intended to fall within the purview of the Act. An "occupational disease" is defined as one "arising out of and in the course of the employment." 820 ILCS 310/1(d) (West 2010). A disease arises out of the employment if there is a "causal connection between the conditions under which the work is performed and the occupational disease." *Id.* The disease "must appear to have had its origin *** in a risk connected with the employment and to have flowed from that source as a rational consequence." *Id.* There is no dispute for purposes of this appeal that James's disease was precipitated by occupational exposure to asbestos.

¶ 25    Moreover, the Act specifically addresses diseases caused by asbestos exposure, and, indeed, employees and spouses have recovered for disabilities or death arising from workplace asbestos exposure, including mesothelioma. See, *e.g.*, *Kieffer & Co. v. Industrial Comm'n*, 263 Ill. App. 3d 294 (1994) (employee, who had been exposed to asbestos in the workplace for 40 years, died after being diagnosed with mesothelioma, and his widow was entitled to recover benefits); *Owens Corning Fiberglas Corp. v. Industrial Comm'n*, 198 Ill. App. 3d 605 (1990) (widow had an independent claim for death benefits arising from her husband's mesothelioma); *H&H Plumbing Co. v. Industrial Comm'n*, 170 Ill. App. 3d 706 (1988) (employee who was exposed to asbestos in the workplace as a pipefitter recovered under the Workers' Occupational Diseases Act for his lung disease); *Zupan v. Industrial Comm'n*, 142 Ill. App. 3d 127 (1986) (employee who was exposed to asbestos in the workplace for 22 years as a bricklayer recovered under the Workers' Occupational Diseases Act). Thus, it is evident that the legislature intended that occupational diseases arising from workplace asbestos exposure are the type of injury contemplated to be within the scope of the Act. Accordingly, under *Pathfinder*, *Collier* and *Meerbrey*, James's injury is the type of injury compensable under the Act.

¶ 26    Nevertheless, those cases never addressed specifically whether the exclusivity provisions would bar a cause of action where there was no possibility of seeking compensation benefits under the Act because of certain time limitations on the employer's liability. In *Moushon v. National Garages, Inc.*, 9 Ill. 2d 407 (1956), and *Duley v. Caterpillar Tractor Co.*, 44 Ill. 2d 15 (1969), however, this court had some opportunity to consider the interplay between certain provisions under the Workers' Compensation Act that limit the employer's liability and the exclusive remedy provisions.

¶ 27    In *Moushon*, an employee was injured while operating equipment at his workplace. The employer provided medical, surgical and hospital services related to the injury under the Act, but the employee brought an action to recover damages for his resulting permanent impotence. *Moushon*, 9 Ill. 2d at 410-13. This court held that the exclusivity provisions of the Act barred the employee's cause of action even though no compensation for his permanent injury was provided for under the Act. *Id.* at 410-12.

¶ 28    Notably, the *Moushon* court did not adopt the view articulated by the dissenting judge that where "no compensation benefits are provided in the act for the particular injury, so that no remedy is afforded the employee under the act for an injury caused by the employer's

negligence, then a common-law action for damages should be allowed." *Id.* at 418 (Bristow, J., dissenting, joined by Davis, J.).

¶ 29    In *Duley*, the husband of a deceased employee who was fatally injured in a workplace accident brought a wrongful death action against the employer. The employer had paid for the burial expenses as a result of the death, but no other compensation benefits were payable to the husband under the Workers' Compensation Act because the Act limited compensation to those who were dependents of the injured employee. *Duley*, 44 Ill. 2d at 16-18. This court held that the exclusive remedy provisions of the Workers' Compensation Act barred his action even though the husband could not recover for his damages under the Act, other than the nominal amount of funeral expenses. *Id.* at 18.

¶ 30    Thus, since 1956, this court has held that despite limitations on the amount and type of recovery under the Act, the Act is the employee's exclusive remedy for workplace injuries.

¶ 31    With this understanding, we now specifically address Folta's arguments. Essentially, Folta contends that the exclusive remedy provisions assume the *possibility* of a right to compensation. In this case, Folta argues that because of the latency of James's disease, various sections, including 6(d) of the Workers' Compensation Act (820 ILCS 305/6(d) (West 2010)) and sections 6(c) and 1(f) of the Workers' Occupational Diseases Act (820 ILCS 310/6(c), 1(f) (West 2010)), precluded her from recovering compensation benefits or even filing an application for benefits because James's injury fell outside those limitations periods of the acts and, therefore, any possibility to even seek compensation benefits was foreclosed. Therefore, Folta maintains that under these circumstances, the employer should not enjoy the benefit of the exclusivity provisions.

¶ 32    We agree that section 6(c) of the Workers' Occupational Diseases Act does bar Folta's right to file an application for compensation. That section provides that, "[i]n cases of disability caused by exposure to *** asbestos, unless application for compensation is filed with the Commission within 25 years after the employee was so exposed, the right to file such application shall be barred." 820 ILCS 310/6(c) (West 2010); see also 820 ILCS 305/6(d) (West 2010) (analogous 25-year limitation period under the Workers' Compensation Act). Section 6(c) further provides that "[i]n cases of death occurring within 25 years from the last exposure to *** asbestos, application for compensation must be filed within 3 years of death ***." 820 ILCS 310/6(c) (West 2010).

¶ 33    Based on the plain language of this section, this provision acts as a statute of repose and creates an absolute bar on the right to bring a claim. In contrast to a statute of limitations, which determines the time within which a lawsuit may be brought after a cause of action has accrued, a statute of repose extinguishes the action after a defined period of time, regardless of when the action accrued. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 61 (2006) (citing *Ferguson v. McKenzie*, 202 Ill. 2d 304, 311 (2001)). It begins to run when a specific event occurs, "regardless of whether an action has accrued or whether any injury has resulted." *Ferguson*, 202 Ill. 2d at 311. Thus, the statute of repose limit is " 'not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered.' " *CTS Corp. v. Waldburger*, 573 U.S. ___, ___, 134 S. Ct. 2175, 2182-83 (2014) (quoting 54 C.J.S. *Limitations of Actions* § 7, at 24 (2010)). The purpose of a repose period is to terminate the possibility of liability after a defined period of time. After the expiration of the repose period, there is no longer a recognized right of action. *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 16.

¶ 34       Thus, the General Assembly intended to provide an absolute definitive time period within which all occupational disease claims arising from asbestos exposure must be brought. Since James's last employment exposure to asbestos was in 1970, the 25-year period of repose has long since expired. The fact that Folta was not at fault for failing to file a claim sooner due to the nature of the disease is not a consideration that is relevant to a statute of repose. Although the statute barred Folta's claim before it had yet accrued, that is the purpose of such a provision.

¶ 35       To construe the scope of the exclusive remedy provisions to allow for a common-law action under these circumstances would mean that the statute of repose would cease to serve its intended function, to extinguish the employer's liability for a work-related injury at some definite time. Further, this interpretation would directly contradict the plain language of the exclusive remedy provision which provides that the employer's liability is "exclusive and *in place of* any and all other civil liability whatsoever, at common law or otherwise." (Emphasis added.) 820 ILCS 310/11 (West 2010).

¶ 36       Thus, the fact that through no fault of the employee's own, the right to seek recovery under the acts was extinguished before the claim accrued because of the statute of repose does not mean that the acts have no application or that Folta was then free to bring a wrongful death action in circuit court. Rather, where the injury is the type of work-related injury within the purview of the acts, the employer's liability is governed exclusively by the provisions of those acts.

¶ 37       We do not find that the provisions in section 1(f) of the Workers' Occupational Diseases Act would lead us to a different result. Generally, section 1(f) provides that "[n]o compensation shall be payable for *** any occupational disease unless disablement *** occurs within two years after the last day of the last exposure to the hazards of the disease." 820 ILCS 310/1(f) (West 2010). Specifically, in cases of occupational disease caused by the inhalation of asbestos dust, no compensation is payable unless disablement occurs "within [three] years after the last day of the last exposure to the hazards of such disease." *Id.*

¶ 38       Folta maintains that since James's disease did not manifest until after the time limitation in section 1(f), and since she and James were both precluded from recovering any compensation benefits offered by the statute, the effect was to essentially exclude this latent disease from coverage under the Act. Thus, Folta asserts that her recourse against the employer must be found in the common law.[2]

¶ 39       In support of her contentions, Folta relies in part on the Pennsylvania Supreme Court's decision in *Tooey v. AK Steel Corp.*, 81 A.3d 851 (Pa. 2013). There, the court construed the Pennsylvania Workers' Compensation Act, which defined "injury" to include "occupational disease," to provide that, if occupational disease was the basis for compensation, that Act only

---

[2]We note that Folta never raised section 1(f) as a basis to defeat Ferro Engineering's motion to dismiss in the trial court and, thus, the trial court never ruled on its impact. Traditionally, we have held that an issue not raised in the trial court is forfeited and cannot be raised for the first time on appeal. See *Daniels v. Anderson*, 162 Ill. 2d 47, 58 (1994) (the theory upon which a case is tried in the lower court cannot be changed on review, and an issue not presented or considered by the trial court cannot be raised for the first time on review). Ferro Engineering did not address the impact of section 1(f) either in the appellate court or before this court, but has failed to bring defendant's forfeiture of the issue to the attention of the appellate court or this court. Therefore, we choose to address the argument.

applied to disability or death resulting from such disease and occurring within a 300-week time window. The court held, over a dissent, that this time limitation "operate[d] as a *de facto* exclusion of coverage under the Act for essentially all mesothelioma claims," where the average latency period for mesothelioma was found to be 30 to 50 years. *Id*. at 863. Therefore, the court held that the common-law claims were not barred by the exclusivity provisions of the Pennsylvania Act. *Id.* at 865.

¶ 40    We do not believe that Illinois's statutory scheme operates as "a *de facto*" exclusion of coverage for latent occupational disease claims. Rather, under our statute, whether compensation benefits are awarded for an occupational disease depends upon the facts and circumstances of each particular case based on proof presented to the Workers' Compensation Commission of when a disability manifested. See, *e.g.*, *Plasters v. Industrial Comm'n*, 246 Ill. App. 3d 1 (1993) (Commission determined that employee proved disablement within two years of his last exposure based on testimony indicating that the claimant was impaired from the disease at the time he retired from mining.).

¶ 41    Given the plain language of the exclusive remedy provisions, which state that there is no right to recover damages from the employer for "*any* injury to health, disease, or death therefrom, other than for the compensation herein provided" (emphasis added) (820 ILCS 310/5(a) (West 2010)), and that the Act is exclusive with respect to "*any* disease contracted or sustained in the course of the employment" (emphasis added) (820 ILCS 310/11 (West 2010)), it would be a radical departure to suggest that the exclusivity provisions apply only for certain occupational diseases in which the disability manifests within the time limitation.

¶ 42    Furthermore, this limitation on the employer's liability was originally enacted in 1936 (1935-36 Ill. Laws 40 (§ 5)). It has remained in the statute unchanged for the last 79 years despite numerous amendments to other provisions of the Act. Since 1936, section 1(f) has functioned as a temporal limitation on the availability of compensation benefits and not as a basis to remove occupational diseases from the purview of the Act. Consistent with *Collier* and *Meerbrey*, the litmus test is not whether there is an ability to recover benefits. Nothing in our statute or the history of our jurisprudence suggests that a temporal limitation removes a work-related injury from the purview of the Act.

¶ 43    We are cognizant of the harsh result in this case. Nevertheless, ultimately, whether a different balance should be struck under the acts given the nature of the injury and the current medical knowledge about asbestos exposure is a question more appropriately addressed to the legislature. It is the province of the legislature to draw the appropriate balance. It is not our role to inject a compromise, but, rather, to interpret the acts as written. See *Roselle Police Pension Board v. Village of Roselle*, 232 Ill. 2d 546, 557 (2009) (this court does not "sit as a superlegislature to weigh the wisdom of legislation [or] to decide whether the policy which it expresses offends the public welfare" (internal quotation marks omitted)).

¶ 44    Finally, we reject Folta's assertions that to hold that the exclusive remedy provisions bar her cause of action would violate the Illinois Constitution's guarantees of equal protection (Ill. Const. 1970, art. I, § 2), prohibition against special legislation (Ill. Const. 1970, art. IV, § 13), and the right to a certain remedy (Ill. Const. 1970, art. I, § 12). Statutes are presumed to be constitutional, and the party challenging the constitutionality of a statute carries the burden of proving that the statute is unconstitutional. *People v. Hollins*, 2012 IL 112754, ¶ 13.

¶ 45    Equal protection guarantees that similarly situated individuals will be treated similarly, unless the government demonstrates an appropriate reason to do otherwise. *People v. Richardson*, 2015 IL 118255, ¶ 9. Equal protection prohibits the state from according unequal treatment to persons placed by a statute into different classes for reasons wholly unrelated to the purpose of the legislation. *People v. R.L.*, 158 Ill. 2d 432, 437 (1994). A special legislation challenge is generally judged by the same standards that apply to equal protection challenges. *In re Petition of the Village of Vernon Hills*, 168 Ill. 2d 117, 123 (1995).

¶ 46    In an underdeveloped argument, Folta contends that interpreting the exclusive remedy provisions to deprive the family of a right to recovery against the employer would arbitrarily create two classes of similarly situated injured workers who are treated unequally and without any rational basis. Folta argues that those workers who suffer from occupational diseases with short latency periods are eligible to receive compensation benefits, while those workers who suffer from occupational diseases with long latency periods are "categorically" prohibited from a right to recover compensation benefits and are additionally prohibited from seeking common-law damages. Folta maintains that this distinction is not rationally related to any apparent legitimate state interest.

¶ 47    We disagree. Under this court's interpretation, these classes of injured workers are indeed all treated equally in terms of the right to bring an action for damages. All of these workers are precluded from seeking common-law damages. Therefore, Folta has not established any disparate treatment in the application and scope of the exclusive remedy provisions.

¶ 48    Furthermore, Folta's premise that all employees who suffer from occupational diseases with long latency periods are "categorically" unable to recover benefits, is incorrect. For example, in *Stypula v. City of Chicago*, Ill. Workers' Compensation Comm'n No. 98-WC-062986 (Nov. 25, 2003), a city employee was exposed to asbestos from 1976 through 1998 as a garbage hauler. He then retired, and three years later, in 2001, he was diagnosed with mesothelioma and died. Even though he had a long latency period, his widow was entitled to compensation where she filed within three years of the death because the employee's disability arose within three years of the last day of exposure. See also *Kieffer*, 263 Ill. App. 3d 294 (claimant, who had been exposed to asbestos in the workplace for 40 years, filed a claim within two years of his last exposure after being diagnosed with mesothelioma). Assuredly, there are examples where the particular facts and circumstances are such that they do not allow for recovery of benefits against the employer. But there is no "categorical" class without a right to seek benefits against their employer. Thus, we find Folta's equal protection and special legislation arguments lack merit.

¶ 49    Additionally, we reject Folta's argument that interpreting the scope of the exclusive remedy provisions to bar the wrongful death action would violate the certain remedy clause of the Illinois Constitution. As Folta acknowledges, this clause is " 'merely "an expression of a philosophy and not a mandate that a certain remedy be provided in any specific form." ' " (Internal quotation marks omitted.) *Cassens Transport Co.*, 218 Ill. 2d at 532 (quoting *Segers v. Industrial Comm'n*, 191 Ill. 2d 421, 435 (2000)). Additionally, this court has explained that the legislature "may restrict the class of potential defendants from whom a plaintiff may seek a remedy" without violating the certain remedy clause. *Bilyk v. Chicago Transit Authority*, 125 Ill. 2d 230, 246 (1988).

- 11 -

¶ 50    The acts do not prevent an employee from seeking a remedy against other third parties for an injury or disease. Rather, in this case, the acts restrict the class of potential defendants from whom Folta could seek a remedy, limiting Folta's recourse for wrongful death claims to third parties other than the employer. In this case, Folta named 14 defendant manufacturers of asbestos-related products. Folta was not left without any remedy. Thus, we find no merit to the constitutional claims raised by Folta.

¶ 51                                        CONCLUSION

¶ 52    For all of the foregoing reasons, Folta's action against Ferro Engineering for wrongful death is barred by the exclusive remedy provisions of the Workers' Compensation Act and the Workers' Occupational Diseases Act.

¶ 53    Appellate court judgment reversed.

¶ 54    Circuit court judgment affirmed.

¶ 55    JUSTICE FREEMAN, dissenting:

¶ 56    The majority today holds that plaintiff's common-law action against his former employer is barred by the exclusive remedy provisions of the Workers' Compensation Act and the Workers' Occupational Diseases Act. Plaintiff never had the right to file an application for compensation under either of these acts, whose time limitations expired long before plaintiff's mesothelioma was manifest. Plaintiff sought relief through the instant common-law action. However, in the majority's view, the acts' exclusive remedy provisions preclude any such common-law claim. Plaintiff thus is completely barred from seeking any compensation from his former employer for his asbestos-related disease. I strongly disagree with the majority's decision. Accordingly, I dissent.

¶ 57    Plaintiff James Folta was employed by defendant Ferro Engineering (Ferro) from 1966 to 1970. During that time, as part of his job duties, he worked with various asbestos-containing products, allegedly on a daily basis. Forty-one years later he was diagnosed with mesothelioma, a disease associated with asbestos exposure. He subsequently brought a civil action in circuit court against 15 defendants, including Ferro, to recover damages for his asbestos-related disease.[3] Ferro filed a motion to dismiss the counts against it, arguing that plaintiff's claims were barred by the exclusive remedy provisions of the Workers' Compensation Act (820 ILCS 305/5(a), 11 (West 2010)) and the Workers' Occupational Diseases Act (820 ILCS 310/5(a), 11 (West 2010)). Plaintiff argued, in response, that his action fell outside the exclusive remedy provisions under an exception for claims that are "not compensable under the Act." Plaintiff noted that any potential asbestos-related claim was barred before he became aware of it under the 25-year limitation provision in section 6(c) of

_____

[3]During the pendency of the litigation, James died and his widow, Ellen Folta, was substituted as plaintiff. The complaint was subsequently amended to assert a wrongful death claim against Ferro and the other defendants.

the Workers' Occupational Diseases Act (820 ILCS 310/6(c) (West 2010)),[4] and his action in circuit court was not barred. The circuit court granted Ferro's motion to dismiss, concluding the action was barred by the exclusive remedy provisions. Following resolution of the claims against the remaining defendants, plaintiff appealed from the dismissal of the claims against Ferro.

¶ 58    In a unanimous opinion, the appellate court reversed and remanded. 2014 IL App (1st) 123219. Regarding the exclusivity provisions of the Workers' Compensation Act and the Workers' Occupational Diseases Act, the court noted the scope of these provisions is not absolute. The court pointed to *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 463 (1990), which listed four exceptions to the Workers' Compensation Act's exclusivity provisions. Under those exceptions, an injured employee may still bring a common law action against his employer if he can prove that: (1) the injury was not accidental; (2) the injury did not arise from his employment; (3) the injury was not received during the course of his employment; or (4) the injury is " 'not compensable under the Act.' " 2014 IL App (1st) 123219, ¶ 27 (quoting *Meerbrey*, 139 Ill. 2d at 463); accord *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 237 (1980). Plaintiff argued that the fourth exception, for injuries "not compensable under the Act," should apply to enable him to bring a common-law claim against his former employer, where any potential claim for recovery under the Workers' Compensation Act or the Workers' Occupational Diseases Act was time-barred before he became aware of his injury. Ferro argued, in response, that the appellate court should adopt a narrow reading of "not compensable under the Act" and find that an injury is not compensable only if it does not arise out of and in the course of employment. 2014 IL App (1st) 123219, ¶ 29. The court rejected Ferro's argument, correctly noting that Ferro's proposed definition of compensability "would render the fourth *Meerbrey* exception superfluous, since *Meerbrey* already contains explicit exceptions for injuries that did not arise from a worker's employment and injuries that were not received during the course of employment." *Id.* ¶ 30. The court held that the fourth *Meerbrey* exception applied to allow plaintiff to bring a common law suit against Ferro. *Id.* ¶ 36. In the court's view, plaintiff's injury was "quite literally not compensable under the Act, in that all possibility of recovery is foreclosed because of the nature of plaintiff's injury." *Id.*

¶ 59    Here, the majority correctly notes that this case is about the interpretation of the exclusive remedy provisions of the Workers' Compensation Act and the Workers' Occupational Diseases Act. Those exclusivity provisions are set forth in sections 5 and 11 of each Act. Section 5(a) of the Workers' Occupational Diseases Act provides, in relevant part:

---

[4]Section 6(c) of the Workers' Occupational Diseases Act provides: "In cases of disability caused by exposure to *** asbestos, unless application for compensation is filed with the Commission within 25 years after the employee was so exposed, the right to file such application shall be barred." 820 ILCS 310/6(c)(West 2010). Section 1(f) of the same act provides: "[I]n cases of occupational disease caused by *** the inhalation of *** asbestos dust [no compensation shall be payable unless disablement occurs] *** within 3 years after the last day of the last exposure to the hazards of such disease ***." 820 ILCS 310/1(f) (West 2010). Finally, section 6(d) of the Workers' Compensation Act, which is similar to section 6(c) of the Workers' Occupational Diseases Act, provides: "In any case of injury caused by exposure to *** asbestos, unless application for compensation is filed with the Commission within 25 years after the last day that the employee was employed in an environment of *** asbestos, the right to file such application shall be barred." 820 ILCS 305/6(d) (West 2010).

- 13 -

"§ 5. (a)There is no common law or statutory right to recover compensation or damages from the employer *** for or on account of any injury to health, disease, or death therefrom, other than for the compensation herein provided ***." 820 ILCS 310/5(a) (West 2010).

¶ 60 Similarly, section 11 of the same Act provides:

"§ 11. The compensation herein provided for shall be the full, complete and only measure of the liability of the employer bound by election under this Act and such employer's liability for compensation and medical benefits under this Act shall be exclusive and in place of any and all other civil liability whatsoever, at common law or otherwise, to any employee or his legal representative on account of damage, disability or death caused or contributed to by any disease contracted or sustained in the course of the employment." 820 ILCS 310/11 (West 2010).

The corresponding exclusivity provisions in sections 5(a) and 11 of the Workers' Compensation Act (820 ILCS 305/5(a), 11 (West 2010)) are viewed analogously for purposes of judicial construction. *James v. Caterpillar Inc.*, 242 Ill. App. 3d 538, 549-50 (1993) (exclusivity provisions of Workers' Compensation Act and Workers' Occupational Diseases Act "are homologous for purposes of judicial construction").

¶ 61 In interpreting these exclusivity provisions, the majority looks, as did the appellate court, to the *Meerbrey* exceptions, particularly the fourth exception, under which an injured employee may still bring a common law action against his employer if he can prove that "the injury was not compensable under the Act." *Meerbrey*, 139 Ill. 2d at 463. However, the majority's interpretation of the fourth exception is quite different from that of the appellate court, which held that the exception applied here because plaintiff's injury was "quite literally not compensable under the Act, in that all possibility of recovery is foreclosed because of the nature of plaintiff's injury." 2014 IL App (1st) 123219, ¶ 36. In contrast, the majority appears to agree with Ferro that whether an injury is compensable is defined by the scope of the Act's coverage, and not on the particular employee's ability to recover benefits. See *supra* ¶ 16. After looking at several of this court's decisions, including *Moushon v. National Garages, Inc.*, 9 Ill. 2d 407 (1956), the majority states: "[S]ince 1956, this court has held that despite limitations on the amount and type of recovery under the Act, the Act is the employee's exclusive remedy for workplace injuries." *Supra* ¶ 30.

¶ 62 In *Moushon*, the plaintiff alleged that during the course of his work, a safety device on the man lift he was riding failed and he suffered internal injuries, including a ruptured urethra, and was left impotent. The employer provided medical, surgical and hospital services related to the injury under the Workers' Compensation Act. The employer also paid, and the plaintiff received, compensation for the period of his temporary disability, in accordance with the Workers' Compensation Act. *Moushon*, 9 Ill. 2d at 409. However, the plaintiff also filed a common-law negligence suit against the employer seeking additional damages for his resulting permanent impotence. This court held that the plaintiff's suit for additional damages was barred by the Workers' Compensation Act's exclusive remedy provision. The court further concluded that even if it were assumed that the plaintiff could not recover statutory compensation for every element of damages (*i.e.*, his impotence), "[h]e still is covered by the act and sustained an accidental injury for which he received compensation benefits." *Id.* at 410-11.

- 14 -

¶ 63    *Moushon* fits within the majority's statement that "despite limitations on the amount and type of recovery under the Act, the Act is the employee's exclusive remedy for workplace injuries." *Supra* ¶ 30. In *Moushon*, the plaintiff's injury was within the Workers' Compensation Act's "coverage formula" (*id.* at 411) and the plaintiff received compensation for that injury. That the plaintiff might not have been able to recover statutory compensation for a particular element said to arise from his injury does not entitle him to file a common-law action against his employer for additional damages.

¶ 64    But that is not the situation in the case at bar, where plaintiff was barred from recovering *any* compensation from his former employer for his injury. As the appellate court stated: "[P]laintiff's injury is quite literally not compensable under the Act, in that all possibility of recovery is foreclosed because of the nature of plaintiff's injury." 2014 IL App (1st) 123219, ¶ 36. Plaintiff's "injury" was mesothelioma, which has an average latency period of 30 to 50 years. *Tooey v. AK Steel Corp.*, 81 A.3d 851, 863 (Pa. 2013). Plaintiff's mesothelioma was not manifest until 41 years after he left Ferro, far beyond the 25-year statutory limitation in effect. "Through no fault of his own, plaintiff never had an opportunity to seek compensation under the Act." 2014 IL App (1st) 123219, ¶ 36.

¶ 65    At a minimum, *Moushon*, which formed a basis for the majority's "exclusive remedy" assertion (*supra* ¶¶ 26-28) is inapposite to the case at bar.

¶ 66    Another difficulty with the majority's analysis is that, while acknowledging that this case requires interpretation of the exclusive remedy provisions of the Workers' Compensation Act and the Workers' Occupational Diseases Act, the majority's interpretation of these provisions includes, at most, only scant mention of the canons of statutory construction.

¶ 67    The construction of a statute is guided by familiar principles. The primary objective in construing a statute is to ascertain and give effect to the intention of the legislature. *Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 2012 IL 112566, ¶ 15. The most reliable indicator of that intent is the statutory language, which must be given its plain and ordinary meaning. *Hubble v. Bi-State Development Agency of the Illinois-Missouri Metropolitan District*, 238 Ill. 2d 262, 268 (2010). A statute is viewed as a whole, with all relevant parts considered. *Sylvester v. Industrial Comm'n*, 197 Ill. 2d 225, 232 (2001). Each word, clause and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous. *Chicago Teachers Union*, 2012 IL 112566, ¶ 15; *Sylvester*, 197 Ill. 2d at 232. The court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. *Hubble*, 238 Ill. 2d at 268. In construing a statute, courts presume that the General Assembly did not intend absurdity, inconvenience, or injustice. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000); *Sylvester*, 197 Ill. 2d at 232.

¶ 68    There is also a principle that expressly applies to the construction of the Workers' Compensation Act. "In construing the provisions of the Workmen's Compensation Act, all portions thereof must be read as a whole and in such manner as to give to them the practical and liberal interpretation intended by the legislature." *Vaught v. Industrial Comm'n*, 52 Ill. 2d 158, 165 (1972); *K. & R. Delivery, Inc. v. Industrial Comm'n*, 11 Ill. 2d 441, 445 (1957).

¶ 69     Of particular importance here is the rule that, in construing a statute, the court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. *Hubble*, 238 Ill. 2d at 268.

¶ 70     This court has described the Workers' Compensation Act as "a humane law of a remedial nature whose fundamental purpose is to provide employees and their dependents prompt, sure and definite compensation, together with a quick and efficient remedy, for injuries or death suffered in the course of employment." *General American Life Insurance Co. v. Industrial Comm'n*, 97 Ill. 2d 359, 370 (1983); see also *Pathfinder Co. v. Industrial Comm'n*, 62 Ill. 2d 556, 563 (1976) ("The Act is remedial in nature in that it is intended to provide financial protection for the injured worker."); *cf. Collier*, 81 Ill. 2d at 241 ("[T]he basic purpose of workmen's compensation [is] to place the cost of industrial accidents upon the industry.").

¶ 71     The benefits of the Workers' Compensation Act are not limited to workers, however. Advantages accrue to both sides. The Workers' Compensation Act "imposes liability without fault upon the employer and, in return, prohibits common law suits by employees against the employer." *Meerbrey*, 139 Ill. 2d at 462. The Workers' Compensation Act's exclusive remedy provision thus "is part of the *quid pro quo* in which the sacrifices and gains of employees and employers are to some extent put in balance, for, while the employer assumes a new liability without fault, it is relieved of the prospect of large damage verdicts." 9 Arthur Larson *et al.*, Larson's Workers' Compensation Law § 100.01(1) (2015). This is naturally a two-way proposition.

> "[T]he employer should be spared damage liability only when compensation liability has actually been provided in its place, or, to state the matter from the employee's point of view, rights of action for damages should not be deemed taken away except when something of value has been put in their place." *Id.* § 100.04.

¶ 72     It is instructive to look at the majority's interpretation of the exclusive remedy provisions in terms of the consequences of that interpretation. According to the majority, the acts are the employee's exclusive remedy for workplace injuries, even where, as here, plaintiff never had an opportunity to seek such compensation because his occupational mesothelioma was not manifest until long after the statutory time limitations had elapsed. As the appellate court stated, "plaintiff's injury is quite literally not compensable under the Act, in that all possibility of recovery is foreclosed because of the nature of plaintiff's injury." 2014 IL App (1st) 123219, ¶ 36. "Through no fault of his own, plaintiff never had an opportunity to seek compensation under the Act." *Id.* Under the majority's interpretation of the exclusivity provisions, plaintiff is barred not only from recovering compensation benefits under the acts, but from recovering against his former employer under the common law as well. The majority's interpretation runs directly counter to the acts' purpose (see *General American Life Insurance*, 97 Ill. 2d at 370 (describing Workers' Compensation Act as "a humane law of a remedial nature whose fundamental purpose is to provide employees and their dependents prompt, sure and definite compensation")), as well as the assertion (regarding the *quid pro quo*) that "rights of action for damages should not be deemed taken away except when something of value has been put in their place" (9 Arthur Larson *et al.*, Larson's Workers' Compensation Law § 100.04 (2015)). In addition, the majority's interpretation contradicts the principle that, in construing a statute, courts presume that the General Assembly did not intend absurdity, inconvenience, or injustice. *Michigan Avenue National Bank*, 191 Ill. 2d at 504; *Sylvester*, 197 Ill. 2d at 232.

¶ 73    In my view, the majority's interpretation cannot be the law. In elaborating on that interpretation, the majority asserts that section 6(c) of the Workers' Occupational Diseases Act—which imposes a 25-year time limit on applications for compensation in asbestos cases—"acts as a statute of repose and creates an absolute bar on the right to bring a claim." *Supra* ¶ 33. The majority explains that the purpose of a repose period is to terminate the possibility of liability after a defined period of time. "After the expiration of the repose period, there is no longer a recognized right of action." *Id.* That is exactly the point. If there is no longer a recognized right of action, then the employee's injury is not compensable under the Act, and the employee may bring (under the fourth *Meerbrey* exception) a common-law cause of action against his employer. As the appellate court below noted: "[P]laintiff's injury is quite literally not compensable under the Act, in that all possibility of recovery is foreclosed because of the nature of plaintiff's injury." 2014 IL App (1st) 123219, ¶ 36.

¶ 74    I find support for this view in Larson's Workers' Compensation Law, which sharply criticizes a case which, unlike *Moushon*, is almost exactly on point with the case at bar. In *Kane v. Durotest Corp.*, 182 A.2d 559 (N.J. 1962), the employee, Gloria Kane, worked for defendant Durotest from May 1946 to June 1950, except for a short interval in November and December 1947. During the course of her work, she was exposed to highly toxic beryllium compounds, the fumes and dust of which are capable of producing a pulmonary disease known as beryllium poisoning. The disease first manifested itself in her in January 1958, seven and a half years after she left Durotest. Gloria died one year later, in January 1959, at the age of 34, leaving surviving her husband and three children.

¶ 75    New Jersey's Workmen's Compensation Act provided, in pertinent part: " '[A]ll claims for compensation for compensable occupational disease hereunder shall be forever barred unless a petition is filed ***, within *five years* after the date on which the employee ceased to be exposed in the course of employment with the employer to such occupational disease; ***.' " (Emphasis added.) *Kane*, 182 A.2d at 560. Since Gloria's last employment exposure to beryllium was in June 1950, and her occupational disease did not manifest until January 1958, the five-year statutory time limitation elapsed long before she was aware of her illness.

¶ 76    Gloria's husband brought a common-law action individually and as administrator of her estate to recover damages against Durotest for its negligence in exposing her to beryllium poisoning during the course of her employment. Defendant moved for judgment, arguing the case was governed by the Workmen's Compensation Act. The trial court granted the motion and dismissed the case, and the Supreme Court of New Jersey affirmed, citing the exclusivity of the Workmen's Compensation Act. *Id.* at 560-62. The court stated:

> "[W]hen compensation benefits for occupational diseases, including berylliosis, were authorized and brought within the substantive and administrative scheme of the Workmen's Compensation Act, that remedy, with its advantages and its qualifications, was exclusive and in lieu of the former common law right. The legislative action must be considered as occupying and preempting the field; all other remedies were thereby abrogated." *Id.* at 561.

Professor Larson's treatise scathingly censures this case:

> "Other jurisdictions, including Illinois and Pennsylvania, have refused to follow the *twisted logic* in Kane that would (1) bar the claim because it was unknown at the time the statute of repose expired and (2) bar the civil action because of the exclusive

remedy provisions of the state's workers' compensation law." (Emphasis added.) 9 Larson's Workers' Compensation Law § 100.05(3)(b) (2015).

¶ 77      The treatise cites four Illinois cases and one Pennsylvania case that "refused to follow the twisted logic of Kane." The first Illinois case cited is the appellate court decision in the case at bar, followed by *Meerbrey* and two additional appellate court decisions. The Pennsylvania case is *Tooey v. AK Steel Corp.*, 81 A.3d 851 (Pa. 2013), which is briefly discussed in the majority's opinion, extensively discussed in plaintiff's (appellee's) brief, and mentioned in a footnote in defendant Ferro's (appellant's) brief.

¶ 78      *Tooey* is a consolidation of two appeals. In the first case, John Tooey worked for Ferro Engineering (apparently the same defendant as in the case at bar) as an industrial salesman of asbestos products from 1964 until 1982, during which time he was exposed to asbestos dust. In December 2007, Tooey developed mesothelioma and died less than one year later. In the other case, Spurgeon Landis worked for Alloy Rods, Inc., from 1946 until 1982. He, too, was exposed to asbestos throughout his employment and in July 2007 was diagnosed with mesothelioma.

¶ 79      Section 301(c)(2) of the Pennsylvania Workers' Compensation Act (Workers' Compensation Act) provided that " 'whenever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last date of employment in an occupation or industry to which [the employee] was exposed to hazards of such disease.' " (Emphasis omitted.) *Tooey*, 81 A.3d at 857. Both Tooey's and Landis's mesothelioma manifested some 25 years after their last date of employment where they were exposed to asbestos, far beyond the 300-week limitation period in section 301(c)(2) of the Workers' Compensation Act.

¶ 80      In 2008, Tooey, Landis, and their spouses (appellants) filed separate tort actions against multiple defendants, including their employers (collectively, employers). The employers filed motions for summary judgment, alleging that appellants' causes of action were barred by the exclusivity provision of section 303(a) of the Workers' Compensation Act. The appellants responded that a tort action is permitted against an employer where, as here, a disease falls outside the jurisdiction, scope, and coverage of the Workers' Compensation Act. The trial court agreed with the appellants and denied the employers' motions for summary judgment. On appeal, the Superior Court reversed the trial court's decision. In the instant consolidated appeal, the Pennsylvania Supreme Court reversed the decision of the Superior Court and remanded.

¶ 81      The Supreme Court held that claims for occupational disease which manifested outside the 300-week period prescribed by the Workers' Compensation Act did not fall within the purview of the Workers' Compensation Act, and, therefore, the Workers' Compensation Act's exclusivity provision did not preclude injured employees from filing common-law claims against their employers. In reaching this conclusion, the court stated:

> "[T]he consequences of Employers' proposed interpretation of the Act to prohibit an employee from filing an action at common law, despite the fact that [the] employee has no opportunity to seek redress under the Act, leaves the employee with *no remedy* against his or her employer, a consequence that clearly contravenes the Act's intended purpose of benefitting the injured worker. It is inconceivable that the legislature, in

enacting a statute specifically designed to benefit employees, intended to leave a certain class of employees who have suffered the most serious of work-related injuries without any redress under the Act or at common law." (Emphasis in original.) *Tooey*, 81 A.3d at 864.

¶ 82 The *Tooey* decision is persuasive, as is the decision of the appellate court below which, in the words of Professor Larson's treatise, "refused to follow the twisted logic *** that would (1) bar the claim because it was unknown at the time the statute of repose expired and (2) bar the civil action because of the exclusive remedy provisions of the state's workers' compensation law." 9 Arthur Larson *et al*., Larson's Workers' Compensation Law § 100.05(3)(b) (2015).

¶ 83 For the reasons set forth above, I strongly disagree with the majority's decision in this case, and I therefore dissent. I would affirm the judgment of the appellate court.

¶ 84 JUSTICE KILBRIDE joins in this dissent.