**2025 IL 130509**


# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 130509)

CANDICE MARTIN, Appellee, v. GOODRICH CORPORATION *et al.*, Appellants.


*Opinion filed January 24, 2025.*


JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Cunningham, Rochford, and O'Brien concurred in the judgment and opinion.


**OPINION**

¶ 1    This case requires us to construe sections 1(f) and 1.1 of the Workers' Occupational Diseases Act (820 ILCS 310/1(f), 1.1 (West 2022)) regarding a wrongful-death and survival action. Specifically, the United States Court of Appeals for the Seventh Circuit certified three related questions of state law to this court pursuant to Illinois Supreme Court Rule 20 (eff. Aug. 1, 1992). *Martin v. Goodrich Corp.*, 95 F.4th 475 (7th Cir. 2024). Those questions are:

(1) Is the period referenced in section 1(f) a "period of repose or repose provision" for purposes of the exception provided in section 1.1?

(2) If section 1(f) falls within the section 1.1 exception, what is its temporal reach—either by its own terms or through section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2022))?

(3) Would the application of the exception in section 1.1 to past conduct offend Illinois's due process guarantee?

We accepted these certified questions, and for the following reasons, we answer the first question in the affirmative, find the exception in section 1.1 applies prospectively under section 4 of the Statute on Statutes, and as such, find it does not violate Illinois's due process guarantee.

## I. BACKGROUND

¶ 3     The facts of this case, as provided by the Seventh Circuit in its certification ruling and the district court in its order, are as follows. Rodney Martin worked for B.F. Goodrich Company (Goodrich) from 1966 to 2012, when he retired. *Martin*, 95 F.4th at 480-81. During his employment, Rodney was exposed to vinyl chloride monomer and products containing vinyl chloride until 1974. *Id.* at 481. These chemicals are alleged to be known causes of angiosarcoma of the liver. *Id.* at 480. On December 11, 2019, Rodney was diagnosed with angiosarcoma of the liver, and he died on July 9, 2020. Rodney's widow, Candice Martin, filed a civil action in November 2021 and amended her complaint on July 1, 2022. In her amended complaint, Martin asserted a cause of action under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2022)) and the Survival Act (755 ILCS 5/27-6 (West 2022)), alleging Rodney's occupational exposure to hazardous levels of vinyl chloride monomer caused his illness and death. Martin named Goodrich as defendant, along with PolyOne, as a successor-in-interest to Goodrich. Because Martin filed a civil suit outside the compensation system provided under the Workers' Occupational Diseases Act (820 ILCS 310/1 *et seq.* (West 2022)), she invoked the exception in section 1.1 of the Workers' Occupational Diseases Act (*id.* § 1.1) to avoid its exclusivity provisions for work-related exposures to hazardous materials. *Martin*, 95 F.4th at 481.

¶ 4 In response, PolyOne filed a motion to dismiss for lack of personal jurisdiction, while Goodrich filed a motion to dismiss under the exclusivity provisions. *Id.* Goodrich argued the exception in section 1.1 did not apply because section 1(f) (820 ILCS 310/1(f) (West 2022)) was not a statute of repose and section 6(c) (*id.* § 6(c)) did not bar Martin's claim. *Martin*, 95 F.4th at 481. In the alternative, Goodrich argued that using section 1.1 to revive Martin's claim would infringe its due process rights under the Illinois Constitution. *Id.*

¶ 5 The district court denied these motions. *Id.* Goodrich asked the court to certify two legal questions to the United States Court of Appeals for the Seventh Circuit. *Id.* The district court then certified two questions for interlocutory appeal: (1) whether section 1(f) is an applicable statute of repose for purposes of section 1.1, and (2) if so, whether applying section 1.1 to allow plaintiff's civil case to proceed would violate Illinois's constitutional substantive due process. The Seventh Circuit agreed to take the appeal. *Id.*

¶ 6 After reviewing the statutory provisions of the Workers' Occupational Diseases Act, the Seventh Circuit found, "[g]iven the number of cases where this roadmap will chart the course for courts and litigants—plus Illinois's policy interests in its contours—we find each question fit for certification" to this court. *Id.* The Seventh Circuit thus certified the questions from the district court and added an additional question asking, if section 1(f) falls within the section 1.1 exception, what is its temporal reach—either by its own terms or through section 4 of the Statute of Statutes? *Id.* at 483.

¶ 7 This court accepted the certified questions pursuant to Illinois Supreme Court Rule 20 (eff. Aug. 1, 1992). Because the due process question concerns the constitutionality of section 1.1, the Attorney General filed a motion for leave to intervene as an appellee, which we allowed. See Ill. S. Ct. R. 19(c) (eff. Sept. 1, 2006).

¶ 8 II. ANALYSIS

¶ 9 As stated, the Seventh Circuit certified three questions to this court. First, the court asked whether the period referenced in section 1(f) of the Workers' Occupational Diseases Act is a " 'period of repose or repose provision' " for

purposes of the exception provided in section 1.1. *Martin*, 95 F.4th at 482 (quoting 820 ILCS 310/1.1 (West 2022)). Second, the court asked, if section 1(f) falls within the section 1.1 exception, what is its temporal reach—either by its own terms or through section 4 of the Statute on Statutes. *Id.* at 483. Third, the court asked whether the application of the exception in section 1.1 to past conduct offends Illinois's guarantee of due process. *Id.* at 484. We answer each question in turn.

¶ 10                              A. Standard of Review

¶ 11         Certified questions are questions of law that this court reviews *de novo*. *Moore v. Chicago Park District*, 2012 IL 112788, ¶ 9. To answer the questions before us, we are asked to interpret the related provisions of the Workers' Occupational Diseases Act, which we do under *de novo* review. *Accettura v. Vacationland, Inc.*, 2019 IL 124285, ¶ 11 ("The standard of review for questions of statutory interpretation is *de novo*."). The constitutionality of a statute is also reviewed *de novo*. *Sun Life Assurance Co. of Canada v. Manna*, 227 Ill. 2d 128, 136 (2007). Generally, the scope of our review is limited to the certified question. *Moore*, 2012 IL 112788, ¶ 9. "Certified questions must not seek an application of the law to the facts of a specific case." *Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 21.

¶ 12                       B. Compensation for Employment-Related
                                    Injuries and Diseases

¶ 13         The Workers' Occupational Diseases Act was enacted to provide compensation for diseases "arising out of and in the course of the employment or which [have] become aggravated and rendered disabling as a result of the exposure of the employment." 820 ILCS 310/1(d) (West 2022). In enacting the Workers' Occupational Diseases Act and the related Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2022)), which provides financial protection for accidental injuries arising out of, and in the course of, employment, the legislature "established a new framework for recovery to replace the common-law rights and liabilities that previously governed employee injuries." *Folta v. Ferro Engineering*, 2015 IL 118070, ¶ 11. As a result of this statutory framework, when Illinois workers are injured or are diagnosed with a disease in the course of their employment, they receive compensation with the employer being liable on a no-fault basis. This

compensatory system represents a " 'legislative balancing of rights, remedies, and procedures that govern the disposition of employees' work-related injuries.' " *Id.* (quoting *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 44 (1994)).

¶ 14      As the Workers' Occupational Diseases Act allows an employee to receive compensation for work-related illnesses and disease on an employer no-fault basis, the statute places limits on an employee's ability to seek compensation outside the structure it establishes. See *id.* ¶¶ 12-13. There are two exclusivity provisions in the Workers' Occupational Diseases Act that outline the terms of these limitations. Under section 5(a),

> "Except as provided in Section 1.1, there is no common law or statutory right to recover compensation or damages from the employer, his insurer, his broker, any service organization retained by the employer, his insurer or his broker to provide safety service, advice or recommendations for the employer or the agents or employees of any of them for or on account of any injury to health, disease, or death therefrom, other than for the compensation herein provided or for damages as provided in Section 3 of this Act." 820 ILCS 310/5(a) (West 2022).

Similarly, under section 11,

> "Except as provided in Section 1.1, the compensation herein provided for shall be the full, complete and only measure of the liability of the employer bound by election under this Act and such employer's liability for compensation and medical benefits under this Act shall be exclusive and in place of any and all other civil liability whatsoever, at common law or otherwise, to any employee or his legal representative on account of damage, disability or death caused or contributed to by any disease contracted or sustained in the course of the employment." *Id.* § 11.

¶ 15      A key part of the Workers' Occupational Diseases Act is that employees are also required to seek compensation within the applicable time frame provided under sections 1(f) and 6(c), with the failure to do so resulting in a claim or compensation being barred. *Id.* §§ 1(f), 6(c). The function of these sections is to extinguish the employer's liability for a work-related injury at some definite time. See *Folta*, 2015 IL 118070, ¶ 35. The reference to section 1.1 in sections 5(a) and 11 is relatively

new and accounts for an exception the legislature added to the Workers' Occupational Diseases Act in 2019 (see Pub. Act 101-6, § 10 (eff. May 17, 2019) (adding 820 ILCS 310/1.1)). The amendment to add section 1.1 came after this court's decision in *Folta*, and it addresses the concerns in that case that the application of the statute of repose under section 6(c) led to a "harsh result" for the employee. *Folta*, 2015 IL 118070, ¶ 43. However, the amendment does not explicitly state which provisions in the Workers' Occupational Diseases Act are covered under section 1.1. The first certified question thus asks us to determine whether section 1(f), like section 6(c), is a statute of repose under section 1.1. We answer this question in the affirmative.

¶ 16                             C. Section 1(f) Is a Period of Repose

¶ 17         In *Folta*, before the legislative amendment to add section 1.1, this court was asked to determine whether an employee could bring a cause of action outside the Workers' Occupational Diseases Act and the Workers' Compensation Act for a work-related injury that first manifested after the expiration of certain time periods under those acts. *Id.* ¶ 1. The plaintiff in *Folta* was exposed to asbestos during his employment as a shipping clerk and product tester for the defendant. *Id.* ¶ 3. More than 40 years after he ceased his employment with the defendant, plaintiff was diagnosed with mesothelioma, a disease associated with asbestos exposure. *Id.* To recover damages for the mesothelioma he alleged he developed due to his employment, plaintiff filed a civil suit against multiple defendants, including his former employer. *Id.* After the plaintiff passed away during the pendency of the litigation, his widow continued the case and amended the complaint to include a claim for wrongful death. *Id.* ¶ 5.

¶ 18         The defendant filed a motion to dismiss based on the exclusive remedy provisions of the Workers' Compensation Act and the Workers' Occupational Diseases Act. *Id.* ¶ 4. The plaintiff maintained that he could seek a civil action despite the exclusivity provisions because his claim was not covered as his claims were not "compensable" under those acts, where his symptoms of his injury did not manifest until more than 40 years after his last exposure to asbestos. *Id.* He discovered his asbestos-related injury long after the 25-year limitation provision in section 6(c) of the Workers' Occupational Diseases Act, which meant he could not

- 6 -

be compensated under the statute and could instead file a civil action. *Id.* (citing 820 ILCS 310/6(c) (West 2010)). The circuit court found the plaintiff's civil action was barred by the exclusivity provisions of the Workers' Occupational Diseases Act and the running of the limitations period did not render the cause of action noncompensable. *Id.* ¶ 6. Thus, the court granted defendant's motion to dismiss. *Id.*

¶ 19    The appellate court reversed after concluding that the civil action could continue because the plaintiff's claim was not compensable under the Workers' Occupational Diseases Act and the Workers' Compensation Act because the plaintiff had no ability to recover under the statute due to the time limitations. *Id.* ¶ 7. On appeal before this court, the question presented was "whether [the exclusivity] provisions bar an employee's cause of action against an employer to recover damages for a disease resulting from asbestos exposure which arose out of and in the course of employment even though no compensation is available under those acts due to statutory time limits on the employer's liability." *Id.* ¶ 10.

¶ 20    To answer this question, we recognized that, under the exclusivity provisions of the Workers' Compensation Act and the Workers' Occupational Diseases Act, these statutes provided the exclusive means by which an employee could recover against an employer for work-related injuries except in four instances. *Id.* ¶ 14 (recognizing an "employee can escape the exclusivity provisions of the Act if the employee establishes that the injury (1) was not accidental; (2) did not arise from his employment; (3) was not received during the course of employment; or (4) was not compensable under the Act" (citing *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 462 (1990), and *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 237 (1980))). We concluded that the plaintiff's disease was the type of disease intended to fall within the purview of the statute even though the plaintiff could not be compensated due to the time limitations under the statutes. *Id.* ¶¶ 24, 34-36.

¶ 21    In arriving at this conclusion, we construed section 6(c) of the Workers' Occupational Diseases Act and determined that, based on its plain language, "this provision acts as a statute of repose and creates an absolute bar on the right to bring a claim." *Id.* ¶ 33. We distinguished a statute of repose, which "extinguishes the action after a defined period of time, regardless of when the action accrued," from a statute of limitations, "which determines the time within which a lawsuit may be

brought after a cause of action has accrued." *Id.* We further explained that a statute of repose

> "begins to run when a specific event occurs, regardless of whether an action has accrued or whether any injury has resulted. [Citation.] Thus, the statute of repose limit is not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered. [Citation.] The purpose of a repose period is to terminate the possibility of liability after a defined period of time. After the expiration of the repose period, there is no longer a recognized right of action." (Internal quotation marks omitted.) *Id.*

¶ 22   Given the definitive 25-year time period in the statute for bringing claims for compensation for asbestos-related diseases, we concluded the plaintiff's claim was barred. *Id.* ¶ 34. "Although the statute barred [the plaintiff's] claim before it had yet accrued, that is the purpose of such a provision." *Id.* We also found consideration of section 1(f) would not lead to a different result. *Id.* ¶ 37.

¶ 23   We were not blind to the harsh result to the plaintiff in that case, who was without relief through no fault of his own. However, we recognized that "whether a different balance should be struck under the acts given the nature of the injury and the current medical knowledge about asbestos exposure is a question more appropriately addressed to the legislature. It is the province of the legislature to draw the appropriate balance." *Id.* ¶ 43.

¶ 24   In 2019, the legislature responded when it enacted section 1.1, which provides that the exclusivity provisions of the Workers' Occupational Diseases Act

> "do not apply to any injury or death resulting from an occupational disease as to which the recovery of compensation benefits under this Act would be precluded due to the operation of any period of repose or repose provision. As to any such occupational disease, the employee, the employee's heirs, and any person having standing under the law to bring a civil action at law, including an action for wrongful death and an action pursuant to Section 27-6 of the Probate Act of 1975, has the nonwaivable right to bring such an action against any employer or employers." 820 ILCS 310/1.1 (West 2022).

Under the plain language of this statute, when a statute of repose would operate to bar an employee from seeking compensation under the Workers' Occupational Diseases Act based on an occupational disease, as it did in *Folta*, the employee would be allowed to seek compensation by filing a civil action.

¶ 25    The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. *Mosby v. Ingalls Memorial Hospital*, 2023 IL 129081, ¶ 30. The language of the statute is the best indication of legislative intent, and we give that language its plain and ordinary meaning considered in light of other relevant provisions of the statute. *Id.* We may also consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. *Id.* ¶ 31. We therefore look to section 1(f) in conjunction with section 6(c) to determine if section 1(f) is a statute of repose.

¶ 26    The plain language of section 1(f) provides:

"No compensation shall be payable for or on account of any occupational disease unless disablement, as herein defined, occurs within two years after the last day of the last exposure to the hazards of the disease, except in cases of occupational disease caused by berylliosis or by the inhalation of silica dust or asbestos dust and, in such cases, within 3 years after the last day of the last exposure to the hazards of such disease and except in the case of occupational disease caused by exposure to radiological materials or equipment, and in such case, within 25 years after the last day of last exposure to the hazards of such disease." 820 ILCS 310/1(f) (West 2022).

Compensation is not possible under section 1(f) unless an employee is disabled within the applicable period of time. As noted above, we determined in *Folta* that section 6(c), as a statute of repose, "extinguishes the action after a defined period of time, regardless of when the action accrued." *Folta*, 2015 IL 118070, ¶ 33. Unlike section 6(c), section 1(f) does not bar the right to file a claim after the applicable time period passes. However, section 1(f) bars compensation after a defined period of time regardless of whether a claim has accrued or injury has resulted. The consequences for an employee who cannot receive compensation as a result of the application of section 1(f) are similar to those for one whose claim is barred under section 6(c). For purposes of the Workers' Occupational Diseases Act,

barring any compensation by application of section 1(f) effectively extinguishes an employee's right to file a claim under the statute.

¶ 27       Like section 6(c), the bar to compensation in section 1(f) does not relate to the accrual of a cause of action. The time runs whether or not the employee has discovered the injury or been diagnosed with a disease.

> "A statute of repose gives effect to a policy different from that advanced by a statute of limitations insofar as it is intended to terminate the possibility of liability after a defined period of time, regardless of a potential plaintiff's lack of knowledge of his or her cause of action." *DeLuna v. Burciaga*, 223 Ill. 2d 49, 61 (2006).

This policy is effectuated under section 1(f), which terminates the employer's compensatory liability after a period of time regardless of when the employee discovers he has a claim. Therefore, by its plain language, section 1(f) is a statute of repose.

¶ 28       We note that reading section 1(f) as a statute of repose is consistent with section 1.1's reference to "any period of repose or repose provision." 820 ILCS 310/1.1 (West 2022). Section 1.1 does not limit its application to periods of repose or repose provisions under section 6(c). Presumably, as the legislature enacted section 1.1 after *Folta* and was aware of our discussion of section 6(c), it would have limited section 1.1 to section 6(c) had that been its intention. See *People v. Fort*, 373 Ill. App. 3d 882, 889 (2007) ("The legislature is presumed to know how courts have interpreted a statute and may amend the statute if it intended a different construction."). We do not rewrite statutes to add provisions or limitations the legislature did not include. *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 28. Because the General Assembly did not limit the application of section 1.1 to section 6(c), we will not do so either. We apply this section to all statutes of repose under the Workers' Occupational Diseases Act, which includes section 1(f).

¶ 29       Reading section 1(f) as a statute of repose is also consistent with findings by some districts of our appellate court, which we find persuasive. In these cases, section 1(f) is interpreted as a statute of repose because it is not subject to the discovery rule, under which section 1(f) would begin to run only after the employee

discovers his injury. See *Dickerson v. Industrial Comm'n*, 224 Ill. App. 3d 838, 841 (1991) ("[Section 1(f)] does not contain a discovery rule, and we refuse to read one in because section 1(f) operates as a statute of repose rather than one of limitations."); see also *Whitney v. Industrial Comm'n*, 229 Ill. App. 3d 1076, 1078 (1992) ("Section 1(f) operates as a statute of repose rather than one of limitations, and Illinois courts have not hesitated to apply repose provisions despite the acknowledgement that an individual with a long latency disease may be barred from recovery.").

¶ 30 The question of whether section 1(f) is a statute of repose stems, in part, from our statement in *Folta* that "section 1(f) has functioned as a temporal limitation on the availability of compensation benefits and not as a basis to remove occupational diseases from the purview of the Act." *Folta*, 2015 IL 118070, ¶ 42. Defendants argue that this statement means that section 1(f) differs from section 6(c) and, as a temporal limitation, it is a condition precedent to recovery under the Workers' Occupational Diseases Act, not a statute of repose. Defendants cite appellate court decisions supporting this argument. See *Goodson v. Industrial Comm'n*, 190 Ill. App. 3d 16, 18 (1989); *Plasters v. Industrial Comm'n*, 246 Ill. App. 3d 1, 6-8 (1993); *Freeman United Coal Mining Co. v. Industrial Comm'n*, 263 Ill. App. 3d 478, 486 (1994); *Docksteiner v. Industrial Comm'n*, 346 Ill. App. 3d 851, 856 (2004). We find these cases distinguishable because of the questions involved. Additionally, these cases were decided before our decision in *Folta*. As a result, these cases refer to section 6(c) as a statute of limitations and distinguish it from section 1(f), which they find to be a "condition precedent to recovery." See, *e.g.*, *Plasters*, 246 Ill. App. 3d at 7-8; *Docksteiner*, 346 Ill. App. 3d at 856.

¶ 31 We do agree with these cases that sections 6(c) and 1(f) should be read together to effectuate the legislative intent. Having done so, we do not find the legislature intended these sections to be read differently in terms of the application of the time requirements to employee claims. Compliance with both sections is a condition precedent to recovery, but this does not mean they are also not statutes of repose. A condition precedent is something that must be done before something else can happen. Under sections 1(f) and 6(c), before an employee can file a claim or receive compensation, he must apply for compensation within the time period specified in section 6(c) for occupational diseases that caused disablement within the time period specified in section 1(f). Failure to satisfy either requirement extinguishes

the employee's claim and his ability to seek compensation. Therefore, both sections are conditions precedent to recovery. However, as explained above, the sections also meet the definition we set forth in *Folta* for statutes of repose. See *Folta*, 2015 IL 118070, ¶ 33.

¶ 32      Defendants argue that our finding that section 1(f) is a statute of repose would "eviscerate the well-balanced framework" of the Workers' Occupational Diseases Act and allow employees or their heirs to bypass the exclusivity provisions if their claim is barred under section 1(f) but not under section 6(c). We recognize that this may be the case for some employees who could meet the requirements of one section but not the other. However, reading the plain language of sections 1.1, 1(f), and 6(c) together, we find that the legislative intent was to ensure that employees like the one in *Folta* were able to seek compensation even if they did not discover their injury within the time limits provided under the Workers' Occupational Diseases Act. As we found in *Folta*, "ultimately, whether a different balance should be struck under the acts" given the enactment of section 1.1 "is a question more appropriately addressed to the legislature. It is the province of the legislature to draw the appropriate balance. It is not our role to inject a compromise but, rather, to interpret the acts as written." *Id.* ¶ 43. Any change to address defendants' concerns must once again come from the General Assembly.

¶ 33                      D. Section 1.1 Is a Substantive Change
to the Workers' Occupational Diseases Act
and Applies Prospectively

¶ 34      Having concluded that section 1(f) is a statute of repose and thus covered under section 1.1, we turn to the second certified question, which asks us to determine the temporal reach of section 1.1. If the temporal reach of an amended statute is set forth in the statute, then that expression of legislative intent must be given effect, absent a constitutional prohibition. *People ex rel. Alvarez v. Howard*, 2016 IL 120729, ¶ 19. If the temporal reach of the amendment is not set forth in the statutory amendment itself, then it is provided by default in section 4 of the Statute on Statutes. *Id.* ¶ 20 (citing 5 ILCS 70/4 (West 2014)). Section 1.1 does not explicitly set forth its temporal reach in the language of the statute because it does not indicate whether the amendment was retroactive or prospective. See 820 ILCS 310/1.1

(West 2022). We therefore look to section 4 of the Statute on Statutes to determine the reach of the amendment.

¶ 35    Under section 4 of the Statute on Statutes,

"No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding." 5 ILCS 70/4 (West 2022).

Section 4 is a general savings clause, which this court has interpreted as meaning that procedural changes to statutes will be applied retroactively, while substantive changes are prospective only. *Perry v. Department of Financial & Professional Regulation*, 2018 IL 122349, ¶ 43. After determining that a change is substantive, we need not reach the issue of whether application of the substantive change would have a retroactive impact or operation. *Id.* ¶ 44.

¶ 36    Generally, a procedural change in the law prescribes a method of enforcing rights or involves pleadings, evidence, and practice. *Schweickert v. AG Services of America, Inc.*, 355 Ill. App. 3d 439, 442 (2005) (citing *Ogdon v. Gianakos*, 415 Ill. 591, 596 (1953) (This court defined " 'procedure' as including in its meaning whatever is embraced by the three technical terms—pleading, evidence and practice. Practice means those legal rules which direct the course of proceedings to bring parties into court and the course of the court after they are brought in.")) In contrast, a substantive change in law establishes, creates, or defines rights. *Id.* at 443. Section 1.1 changed the statutory framework to allow employees who could not seek compensation under the statute due to the statutes of repose to seek compensation through civil actions. This was a substantive change to the Workers' Occupational Diseases Act, as it gave employees the ability to seek compensation outside the act for work-related injuries and diseases that are otherwise covered under the statute. As a result, the answer to the second certified question is that

- 13 -

application of section 1.1 must be prospective through section 4 of the Statute on Statutes.

¶ 37      The parties agree on this point. However, the parties disagree on what it means to apply section 1.1 prospectively. Martin argues that applying section 1.1 prospectively means to apply it to new actions filed after the amendment was enacted based on claims that accrued after the amendment was enacted. Defendants argue that to apply section 1.1 prospectively means that it would not apply to this case because Rodney's last exposure to vinyl chloride monomer occurred in 1976 and defendants gained a vested right to assert the defenses provided by section 1(f) and the exclusivity provisions of the Workers' Occupational Diseases Act. Defendants argue that a contrary finding, allowing section 1.1 to apply to cases where a claim was barred prior to the amendment, would violate the due process guarantees of the Illinois Constitution. Our resolution of this issue thus implicates the third certified question.

¶ 38                      E. Section 1.1 Does Not Violate
Illinois's Due Process Guarantee

¶ 39      The Illinois Constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws." Ill. Const. 1970, art. I, § 2. Defendants argue the application of section 1.1. to this case would deprive employers of a vested right to a defense under the Workers' Occupational Diseases Act. Statutes are presumed to be constitutional, and the party challenging the validity of the statute has the burden to clearly establish constitutional invalidity. *Burger v. Lutheran General Hospital*, 198 Ill. 2d 21, 31 (2001). A court must construe a statute to affirm its constitutionality if the statute is reasonably capable of such a construction. *Id.* at 32.

¶ 40      In this case, after 1976, under section 1(f), Rodney no longer had the ability to seek compensation under the Workers' Occupational Diseases Act for his employment-related exposure to vinyl chloride monomer. See *Folta*, 2015 IL 118070, ¶ 33 ("The purpose of a repose period is to terminate the possibility of liability after a defined period of time. After the expiration of the repose period, there is no longer a recognized right of action."). Had the legislature amended the Workers' Occupational Diseases Act to revive this claim and make compensation

- 14 -

under it possible, defendants' due process claim would be meritorious. As we have previously recognized, once a statute of limitations has expired, the defendant has a vested right to invoke the bar of the limitations period as a defense to a cause of action. *M.E.H. v. L.H.*, 177 Ill. 2d 207, 214 (1997). That right cannot be taken away by the legislature without offending the due process protections of our constitution. *Id.* at 214-15. This rule applies to statutes of repose in equal measure because, in terms of a defendant's due process rights, the situations are the same. *Id.* at 215. If the claims were time-barred under the old law, they remain time-barred even after a repose period is abolished by the legislature. *Id.*

¶ 41     However, section 1.1 did not revive Rodney's ability to seek compensation under the Workers' Occupational Diseases Act. The amendment gave him and his heir the ability to seek compensation through a civil action. The question therefore becomes whether defendants and other employers have a vested right to the protections offered by the exclusivity provisions of the Workers' Occupational Diseases Act, such that section 1.1 violates their right to due process under our constitution.

¶ 42     The exclusivity provisions of the Workers' Occupational Diseases Act are an affirmative defense to a common-law action brought by an employee for a work-related injury. See *Braye v. Archer-Daniels-Midland Co.*, 175 Ill. 2d 201, 207 (1997) (applying this rule to the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1992))). As such, an employer's potential for tort liability exists unless and until the defense of the Workers' Occupational Diseases Act is established. See *id.* The application of this defense to bar a civil action is not automatic. An employer may choose not to invoke the Workers' Occupational Diseases Act based on its expectation that the plaintiff will fail to establish the elements of a civil claim. See *id.* at 208. Generally, a party's right to a defense accrues when the plaintiff's right to a cause of action accrues. See *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 405 (1998) (finding a school district's right to the total immunity as a defense vested when the cause of action accrued). A cause of action "accrues" when facts exist that authorize the bringing of a cause of action. Thus, a tort cause of action accrues when all its elements are present, *i.e.*, duty, breach, and resulting injury or damage. *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 20. This means that any right to a defense based on the exclusivity provisions of the Workers' Occupational Diseases Act accrues when the employee discovers his injury. In this

case, Rodney was diagnosed with angiosarcoma of the liver in 2019, and his complaint was initially filed in 2021. This was after the enactment of section 1.1. Because defendants did not have a vested right in an exclusivity defense, to apply section 1.1 prospectively would allow claims such as Rodney's to proceed without violating due process.

¶ 43　Additionally, the cardinal rule of interpreting statutes, to which all other canons and rules are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature. *Ferguson v. McKenzie*, 202 Ill. 2d 304, 311 (2001). Applying section 1.1 prospectively means to apply it to cases where an employee's claims under the Workers' Occupational Diseases Act were barred due to the discovery of an illness after section 1.1 was enacted. This was the harsh result the General Assembly sought to address after our decision in *Folta*. To hold otherwise would be to undermine the legislative intent in amending the Workers' Occupational Diseases Act to include section 1.1.

¶ 44　　　　　　　　　　　　III. CONCLUSION

¶ 45　For the foregoing reasons, we answer the certified questions as follows:

¶ 46　First certified question: section 1(f) is a period of repose or repose provision for purposes of section 1.1.

¶ 47　Second certified question: section 1.1 should be applied prospectively under section 4 of the Statute on Statutes.

¶ 48　Third certified question: application of section 1.1 prospectively does not offend Illinois's due process guarantee.

¶ 49　Certified questions answered.